## Case No. 9,996.

### MYERS v. UNITED STATES.

[1 McLean, 493.] [1]

Circuit Court, D. Ohio. July Term. 1839.

PRINCIPAL AND SURETY—BOND OF GOVERNMENT OFFICERS—CREDITS—PRIOR DEFALCATIONS —NEW SURETIES.

1. Moneys collected by the government, on execution, may be proved as a credit in a sub-

[1] [Reported by Hon. John McLean, Circuit Justice.]

sequent action on the same bond, against a different party to the bond, without exhibiting the voucher for such payment to the treasury department.

2. New securities are not responsible for prior defalcations, unless the conditions of the new bond shall embrace them.

[Cited in Allen v. State, 61 Ind. 275; Anaheim Union Water Co. v. Parker, 101 Cal. 488, 35 Pac. 1049. Cited in brief in Barnet v. Abbott, 53 Vt. 127. Cited in Bissell v. Saxton, 66 N. Y. 60. Doubted in Clark v. Wilkinson, 59 Wis. 550, 18 N. W. 483. Cited in Hyatt v. Grover & Baker S. M. Co., 41 Mich. 227, 1 N. W. 1038; Luce v. Dorchester Ins. Co., 105 Mass. 297; Ohning v. City of Evansville, 66 Ind. 63; Scofield v. Churchill, 72 N. Y. 567; Vivian v. Otis, 24 Wis. 521. Distinguished in State v. Sooy, 39 N. J. Law, 547.]

3. When a question arises between liabilities of securities on different bonds of different dates, the general doctrine of the application of payment does not apply.

4. The government cannot apply money received by a receiver of public moneys, and paid over, after the date of the bond, in discharge of a previous defalcation, to the prejudice of the new sureties.

[Cited in Boody v. U. S., Case No. 1,636.]

[Distinguished in Chapman v. Com., 25 Grat. 743. Cited in Ohning v. City of Evansville, 66 Ind. 63. Cited in brief in Ornville v. Pearson, 61 Me. 555.]

[Appeal from the district court of the United States for the district of Ohio.]

At law.

Mr. Wright, for plaintiff.

The District Attorney, for the United States.

OPINION OF THE COURT. The action in the district court was brought on a penal bond for fifteen hundred dollars, given by Peter Wilson, Abraham Myers, and others, securities, conditioned that the said Wilson should faithfully perform his duties as receiver of public moneys, at Steubenville, in the state of Ohio. The bond was dated 22d September, 1820. The breach assigned is, that Wilson received a large sum of money, to wit, the sum of fifteen thousand dollars, which he failed to pay over or account for to the government, as he was bound to do. The defendant, in the district court, pleaded non est factum, and gave the following notice, under the statute. 1. That Wilson was first appointed in the recess of the senate, and gave bond in ten thousand dollars, dated 3d of November, 1808, with Johnson, Wells, and Pritchard, securities. That his permanent appointment was made 6th December, 1808; and that bond was given 6th January, 1809, with Pritchard and George Wilson securities, in $10,000. That afterwards, and upon the requisition of the secretary of the treasury, on the 15th of February, 1819, he gave another bond, with Campbell and Myers, securities; and upon like requisition gave the bond in suit, and if operative, is only collateral, &c. 2. That the duties of receiver were materially changed by several acts of congress. 3. That judgment was obtained on the first bond at July term, 1827, for $10,000, to be released on pay-

ing $9,919, on which $2,320 have been paid. 4. Judgment on second bond against Wilson, at the same term, for $10,000. 5. Judgment on the third bond, at the same term. 6. That the United States brought suit on the bond declared on in July, 1826, and obtained judgment in July, 1827, for the sum due, and on which a large sum has been collected which is claimed as a credit in this case. 7. That Wilson performed his duties as receiver from 22d September, 1820, to 20th December, 1820, from 30th September, 1820, to 6th December, 1820; when his term of office expired. 8. That defendant was surety, and the agent of the treasury, the 18th September, 1828, gave Wilson time till January, 1828.

On the trial, a bill of exceptions was taken by the attorney for the United States, substantially as follows: The defendant offered in evidence under the issue, payment of $2,320 received on execution which issued on a judgment against Wilson and his surety on the above bond, without showing that the vouchers had been exhibited and rejected at the treasury department, or any excuse for not thus exhibiting them, and which vouchers were admitted as evidence. And the court instructed the jury that the question of the application of payments in this case was a substantive fact to be proved by the plaintiff, and whether Wilson's payments since 22d September, 1820, had been applied to the balance then due, was to be determined by the jury from an inspection of the transcripts, and if not applied, the jury could apply them. And the court refused to charge as requested by the attorney of the United States, that from the manner of keeping the accounts, as shown in the transcripts, the jury should apply Wilson's payments since 30th September, 1820, to the balance then due, until such balance was discharged, and that the jury should apply the overplus above the debt of 30th September, 1820, pro tanto, to the sum due 6th December, 1820, or that the jury should apply said surplus, according to priority of time.

The bond on which this action was brought is dated 22d September, 1820, and the first question that arises is, whether the sureties in this bond can be held liable for any prior defalcations of Wilson, the receiver. The answer is, that the sureties are bound for a faithful discharge of the duties of receiver, from the date of the bond; and not that he had performed those duties. If the government intended the bond to cover the official responsibility of Wilson in time past, as well as for time to come, its language would have been adapted to such an object; and the sureties would have had due notice of the extent of their liability. The obligation of a surety is a matter of strict law, and can never arise from implication. The bond must speak for itself, and its language can never be extended or altered, to the injury of the surety. But it is insisted that the transcript shows a large balance due at the date of the bond,

which the receiver was bound to pay over to the government; and a failure to do this, is a failure of official duty, for the due performance of which the sureties in this bond are bound. The transcript, it is true, shows that Wilson was a defaulter in a large sum at the time this bond was executed, and which he should have paid over before its execution to the government. Now can the sureties to this bond be held responsible on this evidence. The receipt of the money by the receiver may be admitted, but suppose, as the fact probably was, that he had applied it to objects of a private nature before the execution of the bond, would any one contend that the sureties are responsible for such misapplication of the public money. The default in this view was complete before the date of the bond, and the fund was misapplied. There could, therefore, be no liability of the sureties under such circumstances, unless the bond provided. expressly for the case. And unless there was more evidence before the jury than that which is found on the transcript, the defendant below could not be charged with any part of this defalcation. It may be admitted, if the government had shown that the whole or any part of the balance due, at the date of the bond, came into the hands of the receiver subsequent to the date of the bond, the sureties might be held responsible for the payment of the amount received. Or if it had been shown that the balance was in the hands of the receiver, not presumptively but in fact, when the bond was given, there would be ground on which to insist that the sureties are liable. But there appears to have been no evidence to the jury that the balance was in the hands of the receiver at the date of the bond; or that it came into his hands subsequently. I am aware that this might have been set up as a matter of defence. But I am inclined to think, that it is not incumbent on the defendant to show the misapplication of monies received, and for which the receiver was in default prior to the execution of the bond. It appears to me that when the government seeks to make a surety responsible for a balance due, at the time the bond is executed, it must show the money was in the hands of the principal when the security became bound.

The court in the case of Farrar v. U. S., 5 Pet. [30 U. S.] 389, say: "We feel no difficulty in affirming that for any sums paid to Rector prior to the execution of the bond, there is but one ground on which the sureties could be held answerable to the United States, and that is on the assumption that he still held the money in bank or otherwise. If still in his hands, he was, up to that time bailee to the government; but upon the contrary hypothesis, he had become a debtor or defaulter to the government and his offence was already consummated. If intended to cover past dereliction, the bond should have been made retrospective in its language. The sureties have not undertaken against his past misconduct."

And the court held that the court below erred in not suffering the defendant to prove the misapplication of the money before the date of the bond. But the question was not raised whether it was not incumbent on the government to show the amount of money in the hands of the surveyor at the date of the bond. This evidence is essential to the liability of the surety; and I am inclined to think that proof of the defalcation only, does not fix this liability. The default being prior to the bond, the government must show that the money was in the hands of the principal at the date of the bond. And this upon the simple ground, that the surety does not undertake to account for prior defaults, but for those which may subsequently occur. In the case cited the fund was placed in the hands of the surveyor for disbursements; but in the case under consideration, the receiver was bound to pay over the money, which he had failed to do; and for such failure, I hold a subsequent surety is not bound, unless the bond be retrospective in its conditions, or the money is shown to be in the hands of the receiver when the bond was given. In [U. S. v. Giles] 9 Cranch [13 U. S.] 227, 229, it was decided that the sureties were not bound for moneys received by a marshal, before the date of the bond. But the charge of the district court, in regard to the application of payments was not prejudicial to the government. It adopts the language of the court, substantially, in the case of U. S. v. Kirkpatrick, 9 Wheat. [22 U. S.] 720. The court there remark, that the general doctrine is, that the debtor has a right if he pleases, to make the appropriation of payments; if he omits it, the creditor may make it; if both omit it, the law will apply the payments according to its own notions of justice. It is certainly too late for either party to claim a right to make an appropriation after the controversy has arisen, and a fortiori, at the time of the trial. But this is not a case where the general doctrine on this subject applies. It is a case between different sets of sureties, under several bonds which have been stated. And I do not conceive that the government had any right to apply monies received and paid over, in the regular course of his duties, subsequent to the date of the bond under consideration, in discharge of a balance due from the receiver, before the date of the bond. This would be doing gross injustice to the defendant, in holding him responsible for a default consummated before he became bound. [U. S. v. January] 7 Cranch [11 U. S.] 575. Subsequent to the date of the bonds, the respective sureties are held responsible. But in ascertaining this liability it is necessary to show when the bonds took effect, and what defalcations they cover.

I am clearly of the opinion that the court very properly refused to instruct the jury, as asked, that the moneys paid by the receiver subsequent to the date of the bond should be first applied in discharge of the balance due before the bond was executed; and consequently there was no error in refusing to instruct them how the residue of the payments, after the discharge of said balance, should be applied. Nor did the court err in permitting evidence of the money collected on the judgment as a credit on this identical bond, against another surety. It was not necessary that the voucher for this payment should be presented, for allowance, at the treasury department. The return of the marshal is evidence of the payment to the government; he being the legal agent of the government to receive it, the execution being placed in his hands. I suppose it would hardly be contended that where an individual had paid to the treasurer of the United States in full, a sum of money which he had collected for them, he must exhibit to the treasury the voucher he had received, before such voucher would be admissible in evidence in an action by the government, for the money thus paid. And the principle is the same whether a payment is made in whole or in part. But the case under consideration is still stronger, as the government has placed the claim in the hands of the officers of the law, and the payment is shown by the official action of those officers. In fact the charge was favorable to the United States, and in some parts against the defendant, as it regards the application of the payments, so that had the verdict been in favor of the government, there would have been error.

Upon the whole the judgment of the district court is affirmed.