CHARLES H. BISSELL, Supervisor, etc., Respondent, v. RAY-
MOND SAXTON et al., Appellants.

The sureties upon the bond of a public officer are liable thereon only for
the defaults of their principal committed after the commencement of
the term of office for which they became his sureties. Although their
principal held the office during a preceding term, they are not liable for
a defalcation which then occurred.

In such case those who were sureties for the officer for the prior term
must be looked to.

In an action upon a bond of an officer, his official reports are not con-
clusive as against his sureties, but mere admissions of the principal,
subject to explanation.

Accordingly, *held*, that the official reports of railroad commissioners
charging themselves with a certain fund were not conclusive against
their sureties in an action upon their bond, that the commissioners
then had the fund on hand; and, it appearing that the fund had in fact
been received and converted by one of their number during a prior
term, that the sureties were not liable.

So, also, *held*, that statements made by the principals upon applying for a
reappointment were not conclusive against the sureties.

The said commissioners were appointed under the act of 1856 (chap. 64,
Laws of 1856) authorizing subscriptions by towns to the stock of the
A. & S. R. R. Co. By the act of 1867 (chap. 747, Laws of 1867), amenda-
tory of said act, each town commissioner is required to account annually
for moneys coming into his hands, " with the interest thereon, provided
such moneys have been used or loaned by him." *Held*, that this provi-
sion did not authorize a commissioner to use the funds in his hands in
his individual business, and that in case he did so and failed to restore
them it was a conversion of the funds and a defalcation.

(Argued February 25, 1876; decided April 25, 1876.)

APPEAL from judgment of the General Term of the Supreme
Court in the third judicial department in favor of plaintiff,
entered upon an order denying motion for a new trial and
directing judgment upon a verdict.

This action was brought upon a bond given by defendants,
Fernando P. Draper and Arthur J. Griggs, as railroad com-
missioners, and signed by them as principals and by the other
defendants as sureties.

The town of Westford, in the county of Otsego, prior to

1867, in pursuance of chapter sixty-four of the Laws of 1856, and the various acts amendatory thereof and supplementary thereto, had appointed commissioners, issued their bonds and subscribed to the capital stock of the Albany and Susquehanna Railroad Company, and become the owner of 300 shares of said stock of the par value of $30,000.

On the 10th day of May, 1867, the defendants Arthur I. Griggs and Fernando P. Draper were appointed commissioners of said town for the purpose of carrying out the provisions of said acts, and duly qualified, and gave the requisite bond and entered upon the duties of such office.

On the last of July or 1st of August, 1869, Griggs and Draper sold the said 300 shares of stock for $30,000, or par, and received therefor a draft on Jay Gould, which the defendant Arthur I. Grigg, on August 2, 1869, paid to his credit at the banking-house of Vermilye & Co., in the city of New York. At that time Griggs had an account with Vermilye & Co., as a dealer in stocks, they purchasing stocks for him, charging him with the purchase-price, holding such stocks as collateral to such indebtedness, and selling the same credited him with the proceeds, less their commissions.

At the time Griggs deposited the said $30,000 with Vermilye & Co., they had so charged against him $50,000 to $55,000, for which they held stocks and bonds purchased for him in the manner aforesaid. At the expiration of their term of office, about May 10, 1870, Griggs and Draper appeared before the county judge with an application for reappointment, and Griggs stated to the county judge that the railroad moneys were invested in bonds and stocks; that they were put in so the town could get the interest. And Griggs and Draper were at that time reappointed commissioners for said town. Previous to their reappointment the said commissioners had paid, from moneys received by them, a portion of the outstanding bonds of said town. On their reappointment the said commissioners executed and delivered to the supervisor of said town, in the manner required by law, the bond in question, conditioned that the said Arthur Irving Griggs

and Fernando P. Draper should "faithfully discharge their duties as such commissioners under said acts, and should make a just and honest application of all moneys, stocks or bonds issued by them or coming into their hands, according to the true intent and meaning of said acts."

After the execution and delivery of said bond the commissioners immediately entered upon the duties of their office, and continued to act as such commissioners until their successors were appointed in July, 1873.

After the passage of the act, chapter 537, of the Laws of 1871, requiring the commissioners appointed under and by virtue of the several acts to facilitate the construction of railroads in this State, at each annual meeting of the board of town auditors, to render a written statement or report annually to said board, showing their receipts, expenditures, etc., at the annual meeting of the board of town auditors, held on the 6th day of February, 1872, Griggs and Draper, as such commissioners, presented their report in writing, wherein they reported a balance of moneys in their hands, as such commissioners, of $18,151.88. At the meeting of the board of town auditors, held on the 4th of February, 1873, they, in like manner, reported in their hands the sum of $17,720.38. On the 19th of July, 1873, other persons were duly appointed commissioners for said town, and demanded of Griggs and Draper all the books, bonds, papers and money belonging to the office of railroad commissioners, but Griggs and Draper gave up no moneys, bonds, or other papers.

The court directed a verdict for plaintiffs, to which defendants' counsel duly excepted. Exceptions were ordered to be heard at first instance at General Term. The commissioners did not appeal.

*Samuel S. Edick* for the appellants. The sureties were only liable for defaults of their principal committed during the term of office for which they became his sureties. (*Vivian* v. *Otis*, 24 Wis., 518; *Myers* v. *U. S.*, 1 McL., 493; *County of Mahaska* v. *Ingalls*, 16 Iowa, 81; *Townsend* v. *Everett*, 4

Ala., 607; 5 Pet., 573; *Farrar* v. *U. S.*, id., 389; *U. S.* v. *Boyd*, 5 How., 50; *U. S.* v. *Gerault*, 11 id., 22; *Bruce* v. *U. S.*, 17 id., 442; *Inhabts. Rochester* v. *Randall*, 105 Mass., 295; Fell's Law of Sureties, 122, chap. 5; *Arlington* v. *Merrick*, 2 Sandf., 403–411; *Overacre* v. *Garrett*, 5 Lans., 156; *Bramford* v. *Iles*, 3 Exch., 380; 7 Har. Dig., 235; *Austin* v. *French*, 7 Metc., 126; *Dedham Bk.* v. *Chickering*, 3 Pick., 335; *Kingston Ins. Co.* v. *Decker*, 33 Barb., 196; *McCluskey* v. *Cromwell*, 11 N. Y., 598; *Amherst Bk.* v. *Root*, 2 Metc., 536.) The sureties are not estopped or concluded from proving the reports of Griggs and Draper false. (1 Greenl. Evi., § 187; *Erickson* v. *Smith*, 38 How. Pr., 454–467; *Parker* v. *Duffee*, 23 Wend., 292; *Fake* v. *Whipple*, 39 N. Y., 398; *Browning* v. *Hanford*, 7 Hill, 120.)

*Samuel A. Bowen* for the respondent. Defendants are liable for the just and honest application by their principals of all moneys and securities they had in their hands as commissioners at the date of the bond or subsequent thereto. (*U. S.* v. *Boyd*, 15 Pet., 187; *Moore* v. *Mad. Co.*, 38 Ala., 670; *Bernard* v. *Comm.*, 4 Litt., 148, 151; *Pendleton* v. *Bk. of Ky.*, 1 Mon., 171, 181; *Governor* v. *Twitty*, 1 Dev., 153; *Wash. Co. Ct.* v. *Harramond*, 4 Hawks, 339; *Comm.* v. *Rhoades*, 37 Penn. St., 60; 2 Phil. Ev. [C. & H. Notes], 669; 1 Greenl. Ev., § 187; *Whitnash* v. *George*, 8 B. & C., 556; *Middleton* v. *Melton*, 10 id., 317; *Davis* v. *Bemis*, 40 N. Y., 453, note; *Bennett* v. *Judson*, 21 id., 238; *President*, etc., v. *Corbin*, 37 id., 320; *Ex. Bk.* v. *Monteith*, 26 id., 505; *State* v. *Grammer*, 29 Ind., 530; *Wayne* v. *Com. Bk.*, 52 Penn. St., 343; 7 Miss., 342; *Mann* v. *Eckford's Exrs.*, 15 Wend., 502; *McWilliams* v. *Mason*, 31 N. Y., 294; *Van Duzer* v. *Howe*, 21 id., 531; *Casoni* v. *Jerome*, 58 id., 315, 322; *U. S.* v. *Gerault*, 11 How. [U. S.], 28; *Vivian* v. *Otis*, 1 Am., 199; 24 Wis., 518.) If defendants could go behind the former reports they were bound to prove the actual loss or illegal appropriation of the moneys during their principal's former term. (*Bruce* v. *U. S.*, 17 How. [U. S.], 438; *Sleete*

v. *Babcock*, 1 Hill, 527; *Kerr* v. *Blodgett*, 16 Abb., 137; Story's Eq. Jur., § 1211.)

RAPALLO, J. This action was brought upon a bond given by the defendants, Draper and Griggs, as principals, and the remaining six defendants as sureties, for the faithful discharge by Draper and Griggs of their duties as railroad commissioners for the town of Westford, under an appointment to that office, for three years, from the 10th of May, 1870.

The bond recited the appointment of Draper and Griggs as commissioners for the town of Westford, to carry into effect an act authorizing the town to subscribe to the capital stock of the Albany and Susquehanna Railroad Company, for three years, from May 10, 1870; and the condition was that Draper and Griggs should faithfully discharge their duties as such commissioners under said act, and should make a just and honest application of all moneys, stocks or bonds issued by them or coming into their hands.

The breach alleged in the complaint consisted in the conversion, by Draper and Griggs, to their own use, of the sum of about $18,000, part of the sum of $30,000, which they had received as such commissioners, in the month of July, 1869, upon the sale of 300 shares of the stock of the railroad company, which had been acquired by the town of Westford, under the before mentioned act of the legislature.

It appears clearly, from the evidence, that this sum of $30,000 had been received, and that the whole of it had been converted by the defendant Griggs, to his own use, before the commencement of the term of office for which the bond now in suit was given, and while Draper and Griggs were holding the same office under a prior appointment, for three years, commencing in May, 1867. The proceeds of sale of the 300 shares of stock were received by Griggs, and were by him paid to Vermilye & Co., brokers in New York, on the 2d of August, 1869, on account of an individual indebtedness of Griggs to them, which amounted to upwards of $50,000; and

no part of this money was ever repaid, or came again into the hands of either Griggs or Draper.

After the payment of this $30,000, and before his reappointment, Griggs redeemed some of the bonds of the town with money raised from other sources, so as to leave him indebted, at the time of his reappointment, in the sum of $18,000 or $20,000; but it does not appear that any other money was in the hands of the commissioners at the time of the appointment of May 10, 1870, or came into their hands afterwards, for which they have not properly accounted. It thus appears that the defalcation for which this action is brought occurred during a term of office prior to that for which the bond in suit was given.

We think it a very clear proposition, on principle and authority, that the sureties upon the bonds of a public officer are liable only for defaults committed by him after the commencement of the term of office for which they became his sureties; and that if it should so happen that the same individual had previously held the same office, under a prior appointment, and had committed defaults during the term of that appointment, those who were his sureties on such prior appointment must be looked to for such defaults, and not those who signed his bonds on his reappointment. Their engagement is for his future, and not his past conduct; and it would be a gross imposition upon them, in the absence of a special stipulation to that effect, to import into their undertaking responsibility for prior delinquencies. This principle has been frequently recognized. (*Myers* v. *U. S.*, 1 McLean, 493; *Farrar* v. *U. S.*, 5 Peters, 372, 389; *U. S.* v. *Boyd*, 15 Peters, 187; S. C., 5 How. [U. S.], 50; *Vivian* v. *Otis*, 24 Wis., 518; S. C., 1 Am. R., 199, and numerous other cases cited on the brief of the appellants.)

It is claimed, however, upon the part of the plaintiff, that the reports made by Draper and Griggs, to the town auditors, for the years 1872 and 1873, were conclusive evidence against their sureties, that they then had in their hands, as commissioners, the balances specified in their reports. This claim

cannot be sustained.   These reports were mere admissions of the principals, subject to explanation by the sureties, and not conclusive against them.  (*U. S.* v. *Boyd*, 5 How., 50.)  From the averments in the complaint it appear that the balances with which the commissioners charged themselves in their reports, arose from the receipt of the $30,000, in July, 1869; and the evidence shows that Griggs had converted this fund to his own use in August, 1869.   Although the commissioners properly charged themselves as debtors for this balance, this did not conclude the sureties from showing that the defalcation occurred during the term which preceded that for which their bond was given.   The statements made by Griggs and Draper to the county judge, on applying for their reappointment, stand upon the same footing.

It is claimed on the part of the respondents that the proofs fail to show that the sum of $30,000, paid by Griggs to Vermilye & Co., in 1869, was lost or misapplied, but show that this sum was invested by Griggs in the purchase of stocks and bonds which were, equitably, the property of the town, although held by Griggs in his own name; and that the act of 1867, impliedly, authorized Griggs to use the fund in that manner, inasmuch as it required the commissioners to account for interest on moneys which had been used or loaned by them, and therefore there was no defalcation in 1869.

I think it would be a very strained construction of this act to hold that if a commissioner used the funds in his hands, as such, in his individual business, and failed to restore them, he would not be in default, or that this provision of the act was a license so to employ the trust moneys.   In the present case there was no evidence that these moneys were loaned by Griggs as commissioner, or invested in any securities.   The proof was that they were paid by him on account of an existing individual debt of his to Vermilye & Co.; that they, at the time, held some securities as collateral to this debt, but what was their character or value is not disclosed.   It does appear, however, that none of the money so paid ever came back, and that no interest of the town in the transaction was

recognized or in any manner protected. It was a clear con-version by Griggs of the fund to his own use, which was con-summated before the commencement of his second official term, and for which an action on his first official bond could have been maintained.

We think the judge erred in directing a verdict for the plaintiff, and that the judgment should be reversed and a new trial ordered, with costs to abide the event.

All concur.

Judgment reversed.