Mary McK. Scofield, Respondent, *v.* Coldwell D. Churchill et al., Appellants.

The sureties to a bond, conditioned as prescribed by the statute (2 R. S., 77, § 42), given by an executor in pursuance of a surrogate's order, in proceedings under the statute (2 R. S., 72, §§ 18, 19, 20) against the executor, upon complaint made because of his removal from the State or for other cause specified, cannot limit their liability to deficiencies or defalcations of the executor occurring after the giving of the bond. The object of the statute was to provide against any improper use of the funds belonging to the estate without regard to the time of its occurrence, and the condition of the bond providing that the executor "shall obey all orders of the surrogate touching the administration of the estate," by its express terms binds the obligors for a failure of the executor to obey an order as to the payment of moneys which came to the hands of the executor, although lost or disposed of before the bond was executed.

*Bissell* v. *Saxton,* 66 N. Y., 55; *Meyers* v. *U. S.,* 1 McLean, 493; *Shankland* v. *Mayor, etc., of Washington,* 5 Pet., 389; 16 Iowa, 81, distinguished.

In an action upon such a bond, to recover a legacy ordered to be paid by the surrogate's decree on the final accounting of the executor, *held,* that evidence tending to show the condition of the assets of the estate, at and prior to the time of the execution of the bond, was incompetent and properly excluded.

Also, *held,* that in the absence of fraud or collusion between the executor and legatee, the decree of the surrogate was conclusive upon the sureties.

(Argued February 8, 1878; decided February 19, 1878.)

Appeal from judgment of the General Term of the Supreme Court in the second judicial department, affirming a judgment in favor of plaintiff, entered upon a decision of the court on trial without a jury.

The nature of the action and the facts are set forth sufficiently in the opinion.

*M. A. Fowler,* for appellant. Sureties to an official bond are only liable for the future conduct of their principal. (*Meyers* v. *U. S.,* 1 McL., 493; 16 Iowa, 81; 5 Pet., 389, 573; 4 Ala., 607; *Bissell* v. *Saxton,* 66 N. Y., 55; 1 McL., 493.) In an action upon the bond of an officer, his official reports are not conclusive as against his sureties, but subject

to explanation. (66 N. Y., 55; *Fake* v. *Whipple*, 39 id., 394; *Gottsberger* v. *Smith*, 5 Duer, 566; *Brown* v. *U. S.*, 5 Pet., 389.)

*O. D. M. Baker*, for respondent. The bond protected against the past as well as future misconduct of the executor. (2 Edm. Stat., 74, § 20; 2 id., 78, § 42; *Baggott* v. *Boulger*, 2 Duer, 169; *Gottsberger* v. *Taylor*, 19 N. Y., 150.) The decree of the surrogate was equally as binding and conclusive upon the sureties to the bond as upon the executor. (2 Duer, 179; *People* v. *Downing*, 4 Sandf., 189; *Stovall* v. *Banks*, 10 Wall., 583; *Leavett* v. *Dabney*, 9 Abb. [N. S.], 373; *Meth. Churches* v. *Barker*, 18 N. Y., 463; *Thayer* v. *Clark*, 48 Barb., 243; 4 Abb. Ct. App. Dec., 391.)

MILLER, J. This action was brought upon a bond given by the defendant Churchill, as principal, and the defendant Hustis and the three other defendants as sureties, upon condition that said Churchill should faithfully execute the trust reposed in him as executor of the last will and testament of Henry Churchill, deceased. * * * " And also obey all orders of the surrogate of the county of Dutchess touching the estate committed." Henry Churchill died in the month of December, 1866, leaving a last will and testament, which was duly proved, in which the defendant, Coldwell D. Churchill, was nominated as executor, and letters testamentary were duly granted and issued to him. In the month of May, 1868, an accounting was had before the surrogate, and a decree was made adjudging the amount of assets of the estate in the executor's hands, and reciting how the same were invested, and among the investments mentioned was a note for a considerable amount, upon which it was stated that no payment had been made, nor any proceedings had for its collection, and the maker of which at the time of the decree and the execution of the bond was insolvent. While these proceedings were pending, an application was made to

the surrogate for the removal of the defendant Churchill from said executorship, and on the 12th of October, 1868, the surrogate made an order that the executor file security within five days, or that he be removed from the executorship. The bond in question was executed in accordance with such order, and presented to, approved by, and filed with the surrogate. Another accounting was had in the month of May, 1875, in which it was ordered that the executor distribute and pay the sums found due from him, and among others a legacy bequeathed to the plaintiff. This he failed to do, and the plaintiff seeks to recover the amount by reason of this alleged breach of the condition of the bond. There is no question as to the defalcation of the executor, and the only defense which is interposed is that the funds invested in the note to which reference has been had were lost to the estate before the bond was executed, and that the sureties, therefore, are not liable for the deficiency.

This principle may very properly be invoked in cases of a public officer who executes a bond for the faithful performance of the duties of his office; and it is held that sureties upon bonds of this kind are only liable for defaults committed after the commencement of the term of office for which such sureties became responsible, and in such a case they would not be held liable for defaults committed by the principal for a prior term of office. This doctrine is placed upon the ground that the law requiring the bond to be taken does not authorize the presumption that it was intended to cover past defalcations, and that the obligation is an engagement for the future and not for the past. The cases cited to uphold this rule fully recognize this principle. (See *Bissell* v. *Saxton*, 66 N. Y., 55; *Meyers* v. *United States*, 1 McLean, 493; 5 Peters, 389; 16 Iowa, 81.)

It will be noticed that in these cases the condition of the bond is entirely different from a bond executed by an executor, who, for any sufficient reason, is directed by the surrogate to file security on account of his own misconduct. In the former case the bond is executed for the purpose of

securing a faithful discharge of the duties of an official position, and it would be extending its scope and purpose far beyond the object in view to include any defalcation or breach of trust which had occurred prior to the period when the bond was given. That would properly belong to a prior term of office, and, as was held in *Bissell* v. *Saxton* (*supra*), to the bond which had previously been given for that purpose. The condition of a bond of this description, according to its plain import, would not include and embrace any official delinquency or default which had previously occurred, and stands, we think, upon entirely a different footing from a bond executed by an executor, by the order of the surrogate, under the Revised Statutes. (2 R. S., 72, §§ 18, 19, 20.) The sections cited make provision for proceedings against an executor who has qualified and been acting in that capacity in cases of incompetency, or where his circumstances are so precarious as not to afford security for the administration of the estate, or where he has removed or is about to remove from the State, and in pursuance of these provisions the bond in question was executed.

The object of the statutes cited was no doubt to furnish protection against any improper use of the fund which had transpired, as well as any future misconduct or default of the executor. The bond was to be furnished within a period of five days, and in default the surrogate was authorized by order to supersede the letters testamentary, and to grant letters of administration with the will annexed. (2 R. S., 72, §§ 21, 22.) If the bond was not given the executor would be removed. An administrator appointed in his place could take immediate steps to recover the property and prevent any further loss or risk, and it is a legitimate presumption that if a bond was given the intention was that it should operate as a security for what had been done as well as what might thereafter transpire. If it were otherwise, and a default had already occurred, all proceedings against the executor might be suspended until he was called to a final account, and that portion which had been wasted or lost

might never be recovered. The surrogate has no power to remove absolutely in the first instance, but only to require a bond to be executed, and if the whole estate had been squandered when the order was made, such obligation would be of no avail unless it was security against losses already existing.

The construction contended for by the appellants' counsel is also in conflict with the plain meaning of the language employed, which not only provides for the faithful execution of the trust, but for obedience to all orders made by the surrogate in relation to the estate. If he makes an order that the executor pay over in accordance with the will the amount due to any legatee which had been lost before the bond was executed, the order could not be enforced if the bond did not cover such a case. This would be not only adverse to its import but against the purpose and intent for which it was required to be executed. In *Baggott* v. *Boulger* (2 Duer, 160), it was held that an administrator's bond, which contains the very same condition and language as the one executed by the defendants was a mere bond of indemnity, and that it was equivalent to a covenant to pay all judgments which might be recovered against the administrator for a specified cause. In *Gottsberger* v. *Taylor* (19 N. Y., 150), it was held that the sureties of a special administrator are liable for money belonging to the estate, received by him before his appointment and as the agent of a previous administrator to whom he succeeded. In this case the bond contained no provision that the administrator should obey the orders of the surrogate, and in this respect differs from and is not as strong as in the case at bar.

It cannot be claimed, we think, that the obligation of the defendant was to be restricted under the circumstances to subsequent failures to account for the estate, and that it excluded any orders of the surrogate from its operation, for as we have seen it rests entirely upon a different basis from the bonds of public officers, which were the subject of controversy in the cases cited by the appellants' counsel. As the

bond included all orders of the surrogate, it follows that the evidence offered upon the trial tending to show the condition of the assets of the estate at and prior to the time of its execution was incompetent and properly excluded. The sureties here have undertaken that the executor shall obey all orders of the surrogate touching the administration of the estate, which was committed to his charge.

It cannot be denied that a breach of this condition has occurred within the letter of the bond, and the positive undertaking of the sureties has become fixed and operative by the surrogate's decree. In the absence of fraud or collusion between the executor and the legatee, the decree of the surrogate is conclusive upon the sureties. It binds the principal and the sureties alike, and cannot be impeached in a collateral proceeding. While the most solemn judgments do not conclude those who are neither parties nor privies, yet, when an obligee undertakes the payment of a judgment which may be recovered against his principal, he cannot escape the effect of such judgment when recovered.

He has bound himself to pay, and is indebted for the amount of the judgment when recovered, without regard to its legal merits. Such is the nature of his contract, and he must abide and stand by it, irrespective of the consequences. He cannot go behind it, or allege that it was erroneous and embraced more than was intended. The decree is final as to the indebtedness of the estate, and the obligation of the executor to pay, and the sureties cannot go back of such judgment. (*Thayer* v. *Clark*, 4 Abb. [Ct. of App.], 391; 48 Barb., 243; *The People* v. *Downing*, 4 Sandf., 189; *Baggott* v. *Boulger*, 2 Duer, 179.)

The judgment was right and should be affirmed.

All concur.

Judgment affirmed.