## THE BOARD OF SUPERVISORS OF TOMPKINS COUNTY, PLAINTIFF, *v.* GEORGE H. BRISTOL AND OTHERS, DEFENDANTS.

*County treasurer — official reports of, admissible against his sureties — duty of, as to trust funds — as to military fund.*

A report made and filed by a county treasurer, in pursuance of chapter 386 of the Laws of 1859, is admissible in evidence, in an action upon his official bond, to show the amount of moneys or securities then in his hands belonging to infants or other persons.

Statements made by a county treasurer to his successor in office, after the expiration of his term, are not admissible against his sureties.

Where a trust, upon which certain securities are held, terminates during the term of office of a county treasurer, he is not bound to transfer such securities to his successor in office, although he has not then paid them over to the persons entitled to receive them.

*Semble,* that it is his duty to transfer to his successor any trust funds in his hands as to which the trusts have not yet expired.

*Quære,* as to whether the county treasurer is bound to pay over to his successor money belonging to the military fund, received in pursuance of section 178 of chapter 80 of the Laws of 1870.

APPEAL from a judgment, entered upon the report of a referee in an action, against a county treasurer and the sureties on his official bond. The referee found, among other things, that in November, 1872, the defendant, George H. Bristol, was elected treasurer of the county of Tompkins. That thereafter on the 5th day of December, 1872, the defendants above named executed and delivered to the supervisors of said county a bond with sureties. That during his said term of office said Bristol, as such treasurer, received large sums of money belonging to said county. That said Bristol did not pay according to law all moneys which came into his hands as treasurer as aforesaid, but on the contrary

at the expiration of the term of his office aforesaid neglected, and still neglects to pay to his successor in said office, and retained and appropriated to his own use the sum of five thousand one hundred ninety-four dollars and sixty cents of the moneys of said county received by him as aforesaid. That on the 8th of April, 1872, there was in this court in the hands of Bristol as treasurer as aforesaid, $3,802.58 in trust to the use of Samuel M. Wilson, an infant, $3,700 of which sum was secured by mortgage, and the balance $102.58 paid to said treasurer in cash on that day. That said Bristol duly passed to his successor the mortgage last mentioned, and also another mortgage to the treasurer in trust for said infant, Wilson, for $300, on account of this fund. That *prima facie*, there appears to be owing on and secured by these two mortgages in trust for said last named infant, on account of said fund a sum equal to the amount thereof—In fact it would appear that only $1,860 remained due on the $3,700 mortgage when it was passed over by Bristol to his successor—That on the 2d day of October, 1872, $790.06 was paid into the Supreme Court to said Bristol as treasurer, as aforesaid, in trust to the use of Martha Lampkin, John Lampkin and Frank Lampkin, infants, that the said Martha duly received the portion thereof to which she was entitled on attaining her majority; that John and Frank had not, nor had either of them, attained the age of twenty-one years at the time of the commencement of this action. That it was not proven on the trial of this action that the defendant, Bristol, had appropriated any part of the fund last mentioned to his own use, or made any default in the performance of his official duty in relation to it. That except as herein specified no fund required to be paid into court was proven to have been received by the defendant, Bristol, as treasurer, as aforesaid, hence he found that *prima facie*, no such fund has been received by him, except as aforesaid. That the defendant, Bristol, has not appropriated to his own use or withheld from his successor, or failed to pay according to law any fund received by him on account of any military organization-

*P. G. Ellsworth* and *M. King*, for the plaintiff.

*F. M. Finch*, for the defendants.

LEARNED, P. J.:

This is an action against a county treasurer and his sureties upon his official bond. Both the plaintiff and the sureties have appealed. But on the argument the counsel for the sureties stated that they asked no reversal of the judgment. Their sole object in appealing was that, in case of a reversal, an opinion should be expressed on certain points.

The only matters then to consider are those raised by the plaintiffs, as ground for a reversal of the judgment. By the report of the referee the plaintiffs recovered for what may be called the county fund, but did not recover for what are called the infant heir fund and the military fund. I do not understand that any question was made on the argument in respect to the recovery for the county funds. But the plaintiffs claim that they should have recovered also for the two other funds above specified.

The first point is that the referee erred in excluding certain alleged official reports as evidence. If the action had been brought to recover for a violation of duty in making imperfect or false reports, there would have been much force in the plaintiffs' argument. But these alleged reports were offered for the purpose of showing the amount of the so-called infant heir fund in the hands of the county treasurer at the time when they were made; and the referee, in his findings of law, held that they were not competent evidence against the defendants.

The referee, in his opinion, states that none of these purport to be official reports. But, on examining the case, this statement seems to be an oversight in regard to one at least. One of these exhibits (marked Q) was a report signed by the treasurer and verified by him, and was filed in the county clerk's office in pursuance of chapter 386, Laws of 1859. In the case of *Bissell* v. *Saxton* (66 N. Y., 55), it is said of similar reports that they were subject to explanation by the sureties, and not conclusive against them. This language plainly implies that such reports would be admissible in evidence; otherwise it could not be said that they were subject to explanation.

From the opinion of the referee and the argument of the defendant's counsel, however, it would seem that the referee must have held this report rather to be insufficient as evidence than

inadmissible.   For the referee states that this report was insufficient to prove the orders or judgment of the court under which this infant heir fund was held; and that the treasurer's sureties could be liable only for money held under some order or judgment of the court.   Hence the referee holds, as I understand him, that the orders or judgments must be shown by the records thereof, unless the production of the record is excused; and that the official statement by the treasurer of the infant heir funds in his hands is no evidence against the defendants.

Before the Constitution of 1846, moneys such as these were paid to the register or clerk of chancery.   (2 R. S., m. p. 172, sect. 24, etc.)   These officers were required to give bonds.   (2 R. S., m. p. 170, sect. 9, *et seq.*)   They held office during the pleasure of the chancellor.   (1. R. S,, m. p. 108, sect. 17.)   Hence it was said that in case of " death, removal or resignation," the funds passed to a successor.   (2 R. S., m. p. 172, sect. 26.)   There was no expiration of office, as there is in the case of a county treasurer. The judiciary act, chapter 280, Laws 1847, sect. 71, substituted the clerk of the Court of Appeals for the register and clerks of chancery and the clerks of the Supreme Court, in respect to such moneys, making all laws relative thereto applicable.   Chap. 277, Laws of 1848, substituted the county treasurers (except in the city of New York) for the clerk of the Court of Appeals; as to such moneys; making all the provisions of law relative thereto applicable to them.   Chapter 386, Laws of 1859, required, in its first section, annual reports from each county treasurer, " of all moneys or securities in his hands, belonging to infants or other persons;" and in its second section made the official bonds applicable to all such moneys and securities.   Chapter 524, Laws of 1874, authorizes the court to direct an action on a treasurer's bond in case of disobedience to an order.   Such action, it would seem, is to be brought in the name of the supervisors.   The present action is not brought under this law last cited.   But it is brought as to the infant heir fund, on the theory that the county treasurer is in default for neglecting to transfer this fund, or part thereof to his successor.   Considering the course of legislation, above set forth, I think it may be assumed that he and the sureties are liable upon the bond, if he has in fact

failed to transfer to his successor any of this infant heir fund in his possession at the expiration of his office; or at least any as to which the trust had not expired. Yet, perhaps, it is not necessary to pass on that question, except for the purpose of examining this case. And the question must be in respect to the exhibit above mentioned, whether that exhibit afforded any legal evidence on this point. The statute of 1859 is very general in its terms. It makes the treasurer's official bond applicable to all moneys and securities in his hands belonging to infants or other persons. It does not in terms call them "trust funds," nor does it speak of them as funds brought into court.

It is probably true that there are no other funds in a county treasurer's hands to which the statute can properly apply, except such as are deposited by order of a court. But the language is such that the sureties are declared to be liable, if in his official character he has funds belonging to infants or other persons, which he misappropriates. As it seems to me, then, that exhibit was evidence that the treasurer had, at the time of its making, the funds therein stated. But the exhibit was made in July, 1873. Bristol continued in office till January 1, 1875. I do not think that it is to be presumed against him that he had not properly managed these funds during that interval. The presumption must be in favor of a proper discharge of official duty.

The subsequent exhibits, marked R and S, were neither signed nor sworn to by Bristol. They cannot, then, be binding on him. They are not official documents. Nor do I think that the examination and report of the referee appointed by the court was evidence against the sureties. It was an *ex parte* investigation, conducted under the authority of the court for its own information. It decided nothing.

The paper called exhibit Y is only a statement made by Bristol to his successor, after his office had expired. It is not evidence against the sureties. (*Tenth Nat. Bank* v. *Darragh*, 8 Sup. Ct. N. Y., 111.) We have, also, the testimony of Van Voorhies, the successor of Bristol, who testifies, in substance, that certain funds were not paid to him. But his only knowledge as to what constituted the infant heir fund, at the time when Bristol's office expired, comes from the statement of Bristol above mentioned.

And the testimony, therefore, amounts to no independent proof on the subject. Laying aside, then, for the present, those cases in respect to which some further evidence was produced, it seems to me that the only evidence is that in 1873 Bristol had certain funds in his hands; and that there is no evidence that he had not appropriated those funds to the rightful owners before his term of office expired, or that he failed to transfer to his successor any that had not been previously paid out to the parties interested.

In regard to some of the infant funds, further evidence was given. It appears that Bristol held a mortgage in trust for Mary A. Stewart. She came of age December 26, 1875, five days before his office expired. It is claimed that a few days before the 26th, Bristol received the money on this mortgage. She demanded it of him, and he failed to pay. It does not appear positively that the satisfaction-piece given in evidence was a satisfaction-piece of this mortgage. But assuming that it was so, the trust for Mrs. Stewart ceased before Bristol's term of office expired. I do not think it can be held that his successor had any right to these funds. Perhaps Bristol might voluntarily pay them over to his successor, if for any reason he had been unable to pay, or had not paid, them to the person who had become absolutely entitled. But however that may be, as the trust had ceased, I do not see how the successor can claim to have the trust funds. The case is somewhat analogous to that of an ordinary trustee holding several distinct trust funds for several parties. If for any reason a successor should be appointed to such trustee, the successor would not succeed to the trusts which had expired. It might even be doubted whether, as to such trusts, the trustee could relieve himself from responsibility by any transfer to a successor. As to the Lamphin heirs, it appears that John and Frank were not of age when Bristol's office expired. I am unable to see that there is any evidence showing that the investment held for them was not transferred to Bristol's successor. This should be shown, in order to make Bristol and his sureties liable. In regard to the Wilson heir, the evidence is that a mortgage was given to the treasurer April 15, 1872, for $3,700; and that Bristol, on the expiration of his office, turned over to his successor only $2,160; that is to say, the original mortgage, on which it is said that only $1,860

remained due, and another mortgage of $300. It should be noticed, at this point, that there is printed in the case what appears to be an account between Bristol and Wilson which is in fact only a memorandum made up by a witness, and is not, as was stated on the argument, any part of the evidence. It is not, as might at first appear, an account rendered by Bristol. And the witness who produced it stated that he had no personal knowledge on the the subject. We are left, then, at the most, to the fact simply that the fund turned over to Bristol's successor is less than the fund had been in 1872. I do not think that we can legally conclude from that fact alone that Bristol and his sureties are liable in this action. No evidence, so far as I can see, is given that the fund has not been applied to the infant's support. And it is testified to by Bristol's successor that no claim has been made by the infant to his knowledge.

We must bear in mind, throughout the consideration of this case, that this is not a mere proceeding to have an accounting by a trustee. It is an action brought for a violation of official duty against the parties to the official bond. And it seems reasonable, then that the plaintiffs should show such violation, and should not ask the court to presume that such violation has been committed. These reasons, above given, lead to the conclusion, that the referee properly held that the cause of action was not proved as to the infant heir fund, leaving the parties therein interested to their several actions on the bond, if these funds have been misappropriated.

There remains to be considered the military fund. By the "Military Code" Laws of 1870, chapter 80, section 178, the comptroller is to draw his warrant on the state treasurer, in favor of the county treasurer, for a certain sum of money, for each regiment, etc., certified by the adjutant-general to be organized, etc. By section 182 the official bond applies to these moneys. The only proof on this branch of the case is, that the comptroller did draw his warrant in favor of Bristol to a certain amount, for certain military organizations in Tompkins county, specified in the warrant; and that Bristol received the money; and also that in another instance Bristol drew for another amount, stating it to be for the appropriation to a certain military organization. No

evidence is given to show that the money was not paid by him to the proper organization. Nor is any proof given that any military organization now claims the money.

I do not see how, on these facts alone, we can conclude that the treasurer's sureties are liable in this action. It is, perhaps, unnecessary to examine whether these plaintiffs could, in any case, maintain for their own benefit an action for such moneys. It would seem that this money should be paid to the military organization by Bristol, and that possibly Bristol's successor has no interest in it. It is, perhaps, neither county funds nor trust funds. But we need express no opinion on this point.

I think that in regard to this fund, also, the cause of action was not proved. If there be any military organization claiming this money, it should not be prejudiced by this result of this litigation.

Present—LEARNED, P. J., TAPPAN and MARTIN, JJ.

Judgment affirmed, with costs.