(70 South. 237)

No. 21450.

SUCCESSION OF REILLY v. AMERICAN BONDING COMPANY OF BALTIMORE, MD.

(Nov. 2, 1915. Rehearing Denied Nov. 29, 1915.)

*(Syllabus by the Court.)*

1. EXECUTORS AND ADMINISTRATORS ⬤═528—
    SUCCESSION—LIABILITY OF BONDSMEN—EXTENT.

    A judicial bond will be construed with reference to the law in pursuance of which it was given; and in case of a dative testamentary executor, the bondsman will be liable, to the extent of the bond, for the assets of the succession coming into the hands of the said testamentary executor.

    [Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2375–2394; Dec. Dig. ⬤═528.]

2. EXECUTORS AND ADMINISTRATORS ⬤═537—
    SUCCESSION — ADMINISTRATION BOND — LIABILITY OF SURETIES—FRAUD.

    The liability of sureties on an administration bond is not affected by the fact that they were induced to sign the bond through the fraud or misrepresentation of their principal, of which the beneficiaries of the estate in whose interest

the liability is sought to be enforced are innocent; but they will not be liable to any beneficiary who participated in the fraud.

    [Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2453, 2485–2581; Dec. Dig. ⬤═537.]

3. EXECUTORS AND ADMINISTRATORS ⬤═529—
    SUCCESSION—EXECUTOR'S BOND—LIABILITY OF SURETIES—EXTENT.

    "The sureties are liable, not only for such property of the estate as actually came to the hands of the executor or administrator, but for all property or assets that he might have collected in the exercise of due and reasonable diligence; and so as to assets received before, as well as after, the execution of the bond."

    [Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2395–2403; Dec. Dig. ⬤═529.]

4. EXECUTORS AND ADMINISTRATORS ⬤═529—
    SUCCESSION—EXECUTOR'S BOND—LIABILITY OF SURETIES—EXTENT.

    "Administrators are liable for debts due the succession no longer collectible, which they might have collected by proper diligence." And their sureties are liable in their stead for such neglect.

    [Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2395–2403; Dec. Dig. ⬤═529.]

Appeal from Civil District Court, Parish of Orleans; T. C. W. Ellis, Judge.

Action by Succession of John Reilly against the American Bonding Company of Baltimore, Md. From judgment for plaintiff, defendant appeals. Affirmed.

Solomon Wolff, of New Orleans, for appellant. Frank W. Hart and Dart, Kernan & Dart, both of New Orleans, for appellee.

SOMMERVILLE, J. Plaintiff alleges that James J. Woulfe was appointed dative testamentary executor of this succession, and that the defendant, the American Bonding Company of Baltimore, Md., was surety on the bond of said Woulfe; that Woulfe resigned, and that Thomas F. Reagan had been duly qualified dative testamentary executor as his successor in office, and that he represents plaintiff in this suit; that Woulfe is now a bankrupt; and that defendant is indebted to the succession in the sum of $8,263.01, for the value of assets of the succession unac-

counted for by Woulfe, during his administration of the succession.

The breach alleged was that the executor had not administered the estate according to law, and that defendant was liable for the wrong committed by the dative testamentary executor.

Plaintiff specially alleges, in article 7 of the petition:

"That, while the said Woulfe was acting as dative testamentary executor of this estate, there came into his hands funds belonging thereto, aggregating the sum of $8,621.51, as follows, to wit:

"Cash on hand when the said Woulfe qualified as executor, April 30, 1912, and which was in his possession as such on that date, as per inventory before E. P. Cousin, dated ——, 1912, on file herein, $4,478.52.

"Proceeds of sale of property to Frank Tomeny, before Edward P. Cousin, notary public, on December 2, 1912, which sale was made under order of this honorable court, $3,574.99"

—together with some smaller amounts of rents collected.

The petition admits that Woulfe paid out $358.50 for account of the succession.

Defendant, in its answer, among other things, says:

"Your respondent is informed and believes and so charges that the funds with which the said Woulfe is charged in allegation seventh did not come into his possession and keeping at all, and he never had control of them."

Further, that:

"Your respondent says that it is informed and believes, and so charges, that the item of $4,478.-52, set out in paragraph seventh of the petition, was not on hand when the said Woulfe took possession of the succession and qualified as executor of the estate; that the amount should not have been inventoried, and never reached him; and your respondent is in no wise bound for the same."

Defendant also denied liability for the item of $3,574.99.

There was judgment in favor of the plaintiff against the defendant for the whole amount sued for, and defendant has appealed.

On the brief filed on behalf of the defendant in this court, it is admitted that the evidence establishes that the item of $3,784.99 came into the hands of Woulfe while acting as dative testamentary executor, and that the defendant makes no further contest as to that amount, less the amount admitted to have been spent by Woulfe for account of the succession. The only item in contest is a balance of $4,478.52, which plaintiff alleges was cash on hand and was in Woulfe's possession as dative testamentary executor, as per the inventory taken at the time that he qualified, and the bond was given.

The inventory of the succession was offered in evidence showing the items:

"Cash on deposit in the Hibernia Bank & Trust Company, savings department, amounting to and valued by said appraisers at the sum of $4,478.52"

—in support of the allegation contained in the petition that Woulfe had received cash, when he qualified as executor, as per inventory, $4,478.52. Objection was made to receiving the inventory in evidence on the grounds that it was—

"irrelevant and immaterial to any issue involved in this suit, as not being the best evidence of the things therein stated, and as being res inter alios acta, as against this defendant."

The inventory filed by the executor in this case was competent to show for what he and his surety were liable upon the bond.

On the cross-examination of Hart, a witness for the plaintiff, defendant showed that the money deposited in the savings department of the Hibernia Bank & Trust Company had been withdrawn before James J. Woulfe qualified as executor, that it had been withdrawn by Maurice Woulfe, the then executor, and brother of James J. Woulfe, and that Maurice Woulfe had given the money over to James J. Woulfe, afterwards dative testamentary executor. When James J. Woulfe took the witness stand for plaintiff, and was asked, "Was that money in your possession at the time?" referring to the time of taking the inventory, an objection

was made by the defendant to the answer sought, on the ground that it was not "relevant under the pleadings in this case, and is inadmissible in evidence." And, it is argued, that it was inadmissible because it was contradictory of the allegation made in the petition that the asset was so much cash in hand, instead of being a deposit in bank. Defendant had brought out, on the cross-examination of the witness Hart, that the money had been withdrawn from the bank before the inventory was taken; the door was thereby opened for plaintiff to show that Woulfe, dative testamentary executor, had received this money from the bank, and that it had been misapplied by Woulfe at the time he qualified as dative testamentary executor, and gave bond for the faithful performance of his duty as such. But the evidence was relevant under the pleadings to show the amount of "cash on hand" when Woulfe qualified as executor, April 30, 1912, and which was in his possession as such on that date, as per inventory before E. P. Cousin, dated ————, 1912, "on file herein." The money was an asset of the succession, duly inventoried, although the notary may have wrongfully stated that it was on deposit in the bank, instead of stating that it was cash in the possession of Woulfe, the applicant for letters testamentary. Woulfe had wrongfully stated to the notary, appraisers, and others, that the money was on deposit in bank. The objection was properly overruled.

The bond signed by the defendant for Woulfe, the dative testamentary executor, was for one-fourth beyond the estimated value of the movables and immovables, and of the credits comprised in the inventory, exclusive of bad debts, "for the fidelity of his administration," and defendant is liable to the extent of the bond for the value of the movables, immovables, and credits comprised in the inventory, if the dative testamentary executor was not faithful in his administra-

tion of the trust, as it had guaranteed his administration. C. C. arts. 1041, 1048.

[1, 2] A judicial bond must be construed by reference to the law in pursuance of which it is given, and where a notary errs in classifying one or more of the assets, as, for instance, cash on deposit in a bank when the money is actually in the hands of the applicant for letters, the surety will be liable in the amount of the bond for the value of the assets coming into the hands of the executor. Soldini v. Hyams, 15 La. Ann. 551.

In this case, the inventory is prima facie evidence against Woulfe, the principal debtor, for the amount coming into his hands, and his surety is responsible in the same amount, if it is not shown by evidence in rebuttal that the assets in the inventory did not go into the possession of the dative testamentary executor. Defendant, the bond company, offered no evidence whatever on the trial of the cause.

The property being shown to have belonged to the estate, or to have come into the hands of the executor at any time, the burden is then upon him, and thus upon the defendant in this suit, to account for it.

. It is argued on behalf of the bond company that it, as surety, can be held only for such assets as were actually received by its principal, Woulfe, in the administration of his trust, and that the cash received by him from his brother, the former executor of the succession, was not received by him in the capacity of dative testamentary executor; and it invokes the strict interpretation of the law with reference to the contract of suretyship. Defendant is a compensated surety, and the law is not applied with the same strictness to it as in the case of a surety without compensation. As has already been stated, the bond signed by the defendant was security for the faithful administration of James J. Woulfe, as dative testamentary executor, of all of the assets of the succession of John

Reilly, and it is immaterial what the form of the assets was, or whether they were properly described in the inventory or not.

Defendant urges that it was deceived in signing the bond for Woulfe, and that it was led to believe that the $4,200 in cash was in the savings bank, while it was not. That fraud was practiced by its principal, Woulfe, who, in his application to the defendant to have it serve as security for him, stated that there was about $4,200 in cash, and that he owed nothing to the estate. There was no attempt to show that plaintiff had knowledge of any fraud that was being practiced. The surety company could have investigated and found out the true condition of affairs, instead of relying upon the representations of Woulfe, its principal; and it has itself alone to blame for not having done so. It cannot be heard to set up such defense to its liability. 18 Cyc. 1250.

The object of the bond was to protect the estate against frauds that Woulfe might commit to its prejudice, as well as honest defaults which he might make.

It is immaterial that the money now sued for came into the hands of Woulfe before he qualified as dative testamentary executor. Woulfe was solvent at that time. The plain intention of the condition of the bond is to cover everything belonging to the estate of the deceased, that shall have come into the hands of the executor since the death of the deceased, as well before as after the execution of the bond. Dawes v. Edes, 13 Mass. 177; Sherwood v. Hill, 25 Mo. 391; Gottsberger v. Taylor, 19 N. Y. 150; Foster v. Wise, 46 Ohio St. 20, 16 N. E. 687, 15 Am. St. Rep. 542; Choate v. Arrington, 116 Mass. 552.

The taking of the money of the estate by Woulfe prior to the time that he qualified as dative testamentary executor thereof was a wrong done to the estate for which he is liable; it became a debt due by him to the estate, which he should have collected, and,

138 La.—11

having failed to collect it, or rather to pay it, he is liable therefor. It was an asset in his hands belonging to the estate; and, in the eyes of the law, it was then in his hands to be administered. The fact that prior to executing the bond he had converted the assets to his own use in no way affected the obligation to account for all that had been received by him belonging to the estate, as well as for all damages occasioned by his neglect or maladministration; and it was to secure these obligations that the bond was required and given. His bondsman is liable because of the want of faithfulness on the part of Woulfe in administering upon the estate.

In the case of Goode v. Buford, 14 La. Ann. 102, it is said in the syllabus:

"The surety on the administrator's bond will be held liable for money set down on the inventory as part of the estate, although it is shown that the administrator received it in a fiduciary capacity before his appointment."

—and in the body of the opinion it is held:

"We conclude, therefore, that the cash in the hands of the administrator at the time of his appointment and inventoried must be considered, as subject to administration and covered by the bond given for the fidelity of the administration of the curator."

[3, 4] Mr. Spencer, in his work on Surety, section 317, says:

"The sureties are liable, not only for such property of the estate as actually came to the hands of the executor or administrator, but for all property or assets that he might have collected in the exercise of due and reasonable diligence; and so as to assets received before, as well as after, the execution of the bond."

And, again:

"The undertaking covers all the assets, whether they come into the hands of the officer before or after the execution of the bond. Even though the conversion takes place before the execution of the bond, the sureties will be liable." Stearns on the Law of Suretyship, § 235.

In the case of Brown v. State, 23 Kan. 236, it was held that the sureties giving a second bond knew the condition of the estate, and for what purpose they were giv-

ing the bond. It appeared there that the administrator had previously appropriated certain funds of the estate to his own use, as was shown to be the case here, and the court held that:

"The bond was evidently given to secure that amount. We think the terms of the bond are broad enough to cover it. The administrator was required by its terms to make an inventory of everything belonging to the estate which had or might come into his hands, and to administer the same according to law. If he had previously appropriated said money to his own use, then he was liable to the estate for that amount, and that liability was assets in his hands belonging to the estate, and it was his duty as such administrator to make such assets available to the estate, as required by law."

And in the case of Scofield v. Churchill, 72 N. Y. 565, it is held:

"The sureties" of an executor's bond given under the law "cannot limit their liability to deficiencies or defalcations * * * occurring after the giving of the bond. * * * The condition of the bond * * * that the executor 'shall obey all orders of the surrogate touching the administration of the estate,' by its express terms binds the obligors for a failure of the executor to obey an order as to the payment of moneys which came to the hands of the executor, although lost or disposed of before the bond was executed."

The case of Parmele v. Brashear, 16 La. 72, is cited to show that the surety is not liable for moneys which the principal had received before the date of the bond. It appeared that the defendant there was required, under the law, to give a bond annually; and we say:

"With regard to the moneys which the principal had received, before the date of the bond sued on, of course the defendant is clearly not liable. There is no evidence that any money came into his hands after that time."

But, in the case of Goode v. Buford, 14 La. Ann. 102, before quoted from, we say that:

"The reasoning of the court in that case [Parmele v. Brashear] was in reference to one of three annual bonds which the curator was obliged to give prior to the act of 1837, on each renewal of his office. It does not appear to be applicable to a case like the present."

And it is not applicable to this case.

In the course of the opinion it is said:

"The controversy in this court is confined to the cash received by the recorder when he took the inventory, and before he gave bond as curator. The defendant contends that Le Blanc [the recorder] was insolvent, and that, having received the funds before he was appointed curator, the sureties for him, in the capacity which he bore when he received the money, and in virtue of which he received it, are alone responsible, and that the language of the bond itself imports an obligation of suretyship for future management only, and cannot be held to have a retroactive effect.

"The condition of the bond was that the curator should well and truly perform all the duties incumbent on him as such curator, and pay over whatever moneys should be coming to the lawful heirs of said estate, after the payment of all the just debts of said estate, whenever lawfully required [so] to do. This bond, which substantially embraces the requirements of the Code (see articles 1034, 1119), was based upon the inventory which contained the item of cash on hand as forming part of the assets. Nothing prevented the surety from examining the bond and ascertaining for himself for what things the principal was binding himself. * * * It must be presumed that he still continued to hold the same [the cash], and that when he was qualified as curator, it was in his hands in specie. Coussy v. Vivant, 12 La. Ann. 46.".

And we conclude:

"That the cash in the hands of the administrator at the time of his appointment and inventoried must be considered as subject to administration and covered by the bond given for the fidelity of the administration of the curator."

The points raised by the defendant are fully disposed of in the decision just quoted from.

The bond required by law of an executor is broken if he fails to have made a true inventory of the estate of the testator; therefore money coming to his hands, before letters testamentary have been issued to him, is a part of the estate to be inventoried, and a failure to make such inventory or to put the amount of money as received in the inventory is a breach for which he and his security may be held responsible on his bond. It was an asset for which the principal should account, and it follows that the surety must be held responsible for the amount.

This is not a case in which damages for a frivolous appeal will be allowed.

Judgment affirmed.