𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

BAUGH'S EX'OR v. WALKER.

February 1st, 1883.

1. FIDUCIARIES.—Under no circumstances will a fiduciary be allowed to derive any personal benefit from his transaction of the trust business or management of the trust assets. And if a trustee purchase claims or encumbrances against the trust estate at a discount, the purchase shall enure to the benefit of the interest which it is his duty to protect.

2. IDEM.—*Reimbursement.*—But though the profit belongs to the *cestui que trust,* yet the fiduciary is entitled to be reimbursed the amount he has expended, with interest.

3. CASE AT BAR.—In 1859, of N. W., a lot was bought by J. B., who paid all the price except $900.87, but received then no conveyance. In 1860, J. B. conveyed it to A. B. in trust for himself and wife and survivor during life, remainder to their child. The deed was not acknowledged or certified according to law, though recorded, and A. B. knew of it and held possession under it. In 1861, N. W. conveyed the lot to J. B. but retained a lien. By deed dated 1862, but not signed until 1863, J. B. conveyed absolutely to A. B. one-half the lot, in consideration of A. B.'s paying off the lien. J. B. and wife died, leaving one child, D. F., wife of W. F.; A. B. also died and his executor rented the lot to R. In 1879, N. W. conveyed the same lot to D. F., who, with her husband, conveyed it, together with all moneys due her from A. B.'s estate by reason of his trusteeship, or by reason of the rents and profits received by said trustee on account of said lot, to J. M. W., who, having already brought ejectment against R. for the lot, brought his bill in chancery to settle the accounts of A. B. as said trustee. Accounts of receipts and disbursements having been taken and reported, the trustee was charged with the rents received after the death of J. B., and credited with the amounts paid out by him on the trust account, including the amount paid by him in purchasing the said vendor's lien of $900.87, which, having been paid

in Confederate money, was scaled as of its value at the time it was paid. The report being excepted to by the executor;

HELD:

1. Though the trust deed from J. B. to A. B., trustee, was not duly recorded, yet between the parties thereto, it was valid; and A. B. having actual knowledge of it, the deed of J. B. conveying to him one-half of said lot, was inoperative, except as to J. B.'s life interest therein. A. B. having acted as trustee under the trust deed, is bound for his receipts, and is entitled to be reimbursed for his outlays as such trustee; and having paid out Confederate money to relieve the trust estate of the vendor's lien, is entitled to have the same reimbursed at its value at the time when paid, with its interest.

2. D. F , being entitled to the trust *corpus* and the profits arising therefrom, J. M. W., the grantee of herself and husband, is also entitled thereto.

Appeal from decree of corporation court of the town of Danville, rendered November 1st, 1880, in the suit of James M. Walker, plaintiff, against William A. Baugh, executor of Arthur Baugh, deceased. The only question involved in this case, which is not involved in the case of *Raines* v. *Walker* (*supra*, p. 92), is the settlement of the rents of the property, the title to which is litigated in that case. The decree having been adverse to the executor, he appealed to this court. The opinion states the facts.

*Guy & Gilliam*, for the appellant.

*W. W. Henry*, for the appellee.

LACY, J., delivered the opinion of the court.

James M. Walker filed his bill in chancery in the corporation court of Danville, September, 1879, against William S. Flynn and D. W. Flynn, his wife, and William A. Baugh, executor of Arthur Baugh, deceased, setting forth that in August,

1870, he had purchased of said Flynn and wife a certain lot or parcel of land in the town of Danville, therein described, and also all the right, title and interest in and to any money or debts due to the said Flynn and wife from A. Baugh's estate, by reason of his transaction as trustee for Mrs. Flynn, or by reason of the rents and profits received by said trustee on account of said lot of land. This suit was instituted at the same time that an action of ejectment was brought for the said lot by said Walker against one J. P. Raines, the lessee, in possession, of Arthur Baugh, deceased. The title to that lot was determined in said suit at law, which was brought to this court on a writ of error, and was heard in this court in the name of *Raines* v. *Walker*, when the questions therein arising were finally determined.

This is a suit by said Walker for the rents of the said lot received by said trustee, and for a settlement of the accounts of the said Baugh as trustee. The accounts are taken, and the corporation court of Danville passed upon and decreed the balances confirming the commissioner's report filed in the cause, and overruling all exceptions to same on both sides.

From this decree, Baugh's executor appealed to this court. The errors complained of by the appellant are set forth in his petition, and will be hereafter considered. The appellee insists upon his exceptions, in the argument here, and asks the court that upon the consideration of general error, if any error is perceived against him, that the court will consider the whole record and reverse the proceedings in the same manner as they would do if the said defendant in error were to bring the same before the court by appeal, and insists that the said defendant in error does not waive or release any error as to him. And this the court will do, if, upon consideration of the whole case, such material error shall appear.

The case appears to be as follows: In the year 1859, John Baugh purchased of one Nathaniel Wilson, a lot in the town of Danville, and was put in possession of the same, paying in cash, or its equivalent, a part of the purchase money, how much does

not appear, but it appears from the record that in April, 1861, one-half of the purchase money had been paid by said Baugh, and said Wilson made a deed to said Baugh for the said lot, a lien being expressly reserved in the deed for so much of the purchase money as then remained unpaid, and the entire purchase price is stated at $2,000; and the evidence in the cause shows that the unpaid purchase money was $900.87. Before the execution of this last deed, John Baugh, the grantee therein, had made a deed, conveying this lot in trust to his father, Arthur Baugh, for certain purposes therein set forth, to-wit: for the benefit of himself and his wife for life, and for the survivor, remainder to his children. They had only one child, to-wit: Dandridge W. Baugh, a daughter.

The benefit of this deed of April, 1861, from Wilson to John Baugh, accrued to the benefit of the grantees in the deed of January 7th, 1860. See *Burtners* v. *Keran,* 24 Grat. 42, and *Doswell* v. *Buchanan,* 3 Leigh, 394. But the deed of January 7th, 1860, not having been properly recorded, it was void as to creditors or subsequent purchasers without notice, there being no constructive notice, the same not having been recorded.

On the 22d of August, 1863, Arthur Baugh purchased for a valuable consideration one-half of this same lot, and received a deed for the same from his son, John Baugh. If Arthur Baugh had notice of the deed of January 7th, 1860, by which his grantor had parted already with all his interest in the same land, then the deed of August 22, 1863, was ineffectual to convey the said one-half of the said lot to the said grantee, Arthur Baugh, and the same became vested in him, the said grantee. The said deed of January 7th, 1860, was not recorded. But if he, the said Arthur Baugh, did have actual notice of the said deed of January 7th, 1860, before the execution of the second deed of 1863, then he took nothing by the said deed for one-half of the said lot, and the same was a nullity. Upon the question of notice to Arthur Baugh, the record is full enough.

Arthur Baugh was the father of John Baugh, and was the trustee under the first deed, and as such the grantee, and took the whole property in that way. If he had notice of the deed making him trustee, and he accepted the trust, the best evidence of such fact would be his taking possession as trustee, acting as trustee, and executing the trust; all this the record shows that he promptly did. He rented out the property, advertising it as trustee, and refused to rent it out privately, because he claimed to be acting as trustee, and as trustee for the beneficiaries in that particular deed. It is conclusively established that he had full notice of this trust, created by this very deed.

It is a strong circumstance, tending to the same conclusion, that the deed of April, 1861, was in his possession and withheld from recordation as long as he lived, though he put to record the deed of 1863, executed long after, which conveyed one-half of the same property to him in absolute property. So, while the deed of January 7th, 1860, must be rejected as a recorded deed, it is good between the parties and good as to Arthur Baugh, and he took nothing by the deed of August 22d, 1863. This deed was dated November 5th, 1862, but was not signed, as the record shows, until August 22d, 1863, and this is sufficient to rebut the legal presumption that it was delivered at the time of its date, as it was not a deed until it was signed. But it appears that Arthur Baugh paid in order to lift the lien from the trust property, $900.87, and for this sum he has a valid claim, to be repaid out of the trust fund, which had been thus increased out of his own private funds. The court below allowed this claim and allowed the same as of November 5th, 1862, but as it appeared to have been paid in Confederate currency, the court ordered the same to be scaled as of its true value, upon the principle of compensation for a contribution to the trust fund by a trustee, the limit of which, upon well established principles, was the amount actually paid—for a trustee cannot be allowed to make profit by any transaction with the trust fund. A trustee

will not be permitted to obtain any profit or advantage to himself in managing the concerns of his *cestui què trust,* but whatever benefits or profits are obtained will belong exclusively to the *cestui que trust.* Executors and administrators are not permitted to purchase the debts of the deceased on their own account, but whatever advantage is thus gained by them, by purchases under their value, is for the benefit of the estate. Story's Eq. Jurisprudence, vol. 1, sec. 322, "a trustee is never permitted to make any profit or advantage to himself in managing the concerns of the *cestui que trust.* It applies in like manner to executors and administrators, who are not permitted to purchase up the debts of the deceased on their own account; but whatever advantage is thus derived by them, by purchases at an under value, is for the common benefit of the estate." Indeed, the doctrine may be more broadly stated; that executors or administrators will not be permitted, under any circumstances, to derive a personal benefit from the manner in which they transact the business, or manage the assets of the estate.

Upon a similar ground, it is a settled rule in equity, that if a trustee purchase claims or encumbrances against the trust estate at a discount, the purchase shall enure to the benefit of the interest which it is his duty to protect. 1 Leading Cases in Equity, 94.

In *Green* v. *Winter,* 1 Johnson's Chancery, 27–36, a trustee had bought in at a discount, a mortgage on the trust property. "This purchase," said the chancellor, "ought justly, and upon all sound principles of equitable policy, to enure to the benefit of the trust, and not to the benefit of the trustee."

"A court of equity watches the conduct of a trustee with jealousy, and if he compounds debts or mortgages, or purchases them in, at a discount, he shall not be suffered to turn the speculation to his own advantage;" for this, many authorities might be cited. See *Van Horn* v. *Fonda,* 5 Id. 388, 409; *Hawley* v. *Mancius,* 7 Id. 175, 188; *Giddings* v. *Eastman,* 5 Paige, 561;

*Steele* v. *Babcock*, 1st Hill's N. Y. 528, 530. Case of Steager's Executor, 15 Sergt. & Rawle, 65.

The trustee, however, is entitled to be reimbursed for the amount he has expended, with interest. *Quackenbush* v. *Leonard*, 9th Paige, 334, 344; *Mathews & Wife* v. *Dragaled & others*, 3 Desaussure, 25, 28.

The same privilege is applied when a trustee buys in an adverse claim to the trust estate, the profit accrues to the benefit of the *cestui que trust*, who, however, must reimburse the trustee to the extent of his outlay. *McClanahan's Heirs* v. *Henderson*, 2 Marshall, 388–389; *Morrison's Ex'or* v. *Caldwell*, 5 Monroe, 426, 435; *Kellogg* v. *Wood*, 4 Paige, 578, 621.

If a trustee extinguishes an incumbrance hanging over the property confided to his care out of his own funds, he can only claim to be reimbursed for his outlays in this respect. *Boyd* v. *Hawkins*, 2 Iredell's Equity Reports, 304. Opinion of Gaston, J.; also, *James Allen & Wife* v. *J. B. Bryant & others*, &c., 7 Iredell's Equity Reports, 276. Opinion of Pearson, J., in *Turnage* v. *Turnage*, 7 Iredell's Eq. Reports, 127.

But it is unnecessary to multiply cases or citations of weighty authority in support of these principles.

In this case the trustee paid $900.87 to lift a lien from the trust estate, but he paid it at a time when Confederate money was the sole currency of the country, and if it did effect the raising of a gold debt of that amount from the trust estate, which is admitted, such an advantage cannot enure to him personally, but must be credited to the trust estate with which he was dealing; but he is entitled to receive back, upon the rule of compensation, the value of what he paid. It is not perfectly clear when he paid it, as to the precise time; the deed for his benefit was written and dated November 5, 1862. Delivered by intendment of law on the 22d of August, 1863, it might be contended that he did not pay this money until this deed was delivered, but the court below has fixed the date of its payment at the date of the deed, and it cannot be presumed to have been

paid before that time. But there is one circumstance in this record which fixes beyond all question the fact that it was paid in Confederate money. It was paid to take in John Baugh's note to Wilson, but it was not paid to Wilson. Wilson had sold the note, and the trustee bought from the assignee of Wilson, and the evidence in the cause shows what this assignee paid Wilson, the principal of the note being about $800. Wilson received $200 in money, and a horse which he allowed $600 for. It is very improbable that this transaction was on a gold basis, and this was antecedent to the purchase by the trustee, and it would be most inequitable to allow this trustee, by the payment of so small a value, to raise so large a claim against his *cestui que trust*. The court scaled this debt at three for one, and under the circumstances of this case, that action ought not to be disturbed. The trustee is charged with the rents of this lot only after the death of John Baugh, and the court did not err in that, for it would have been against the terms of the deed itself, to have charged the trustee with the rents during the life of his son, John Baugh. His estate was held liable for the rents actually received by his executor after his death, until the trust was terminated by the coming of age and marriage of the granddaughter, and these charges are credited by all sums actually paid by the trustee during his lifetime, and by his executor after his death, for the support and maintenance of the said granddaughter. These are the principles upon which the cause was decided in the court below, and they appear to be right under the circumstances of this case. There are some minor inaccuracies in the accounts stated by the commissioner, but they are doubtless typographical or clerical errors, and if not, can be easily corrected by the court below. We are of opinion to affirm the decree of the corporation court of Danville.

DECREE AFFIRMED.