# WALTON

*v.*

# WILLIAMS.

*(Supreme Court of Appeals of Virginia, February, 1886.)*

[Virginia Law Journal, 1886, p. 280.]

(Absent, LEWIS, P., and FAUNTLEROY, J.)

**General Receivers—Successive Bonds of Sureties—Case at Bar.**

A general receiver, appointed under the act of June 3d, 1852, (Code, 1873, ch. 175, §§ 15–28), to hold office during the pleasure of the court, executes several annual bonds in different amounts and with different sureties, all conditioned for the faithful performance of his duties; he is removed from office by the court and dies without having paid over to his successor, or to the parties entitled thereto, the money in his hands; a portion of the money received by him was loaned to a firm of which he was a member. In a chancery suit against his personal representative and the sureties in all of his bonds, by the parties who were entitled to the money received by him in a certain suit, to ascertain the liability of the sureties and to recover the money, *held* :

**Same—Same—Same—Jurisdiction to Enforce Bonds.**

1. The jurisdiction is in equity.

**Same—Same—When Take Effect.**

2. The several bonds are cumulative securities for the official conduct of the receiver, taking effect from their respective dates, and terminating with his removal from office.

**Same—Same—Liability of Sureties.**

3. The several bonds differing in amount, the liability of the several sets of sureties is not equal, but in proportion to the penalties of the different bonds.

**Same—Same—Chargeable with Simple Interest.**

4. The receiver and his sureties are chargeable only with simple interest upon the sums loaned to the receiver's firm, to be computed from the time it became his duty to invest those sums respectively.

Same—Same—Bill Treated as Creditor's Bill.
5. The bill must be treated as a creditor's bill, although it does. not purport to be such, and other creditors may come in by petition and be made co-plaintiffs.

Appeal from circuit court of Shenandoah county. Case heard at Staunton.

The opinion states the case.

*W. J. Robertson* and *M. L. Walton*, for appellant.

*Barton & Boyd* and *J. J. Williams*, for appellee.

HINTON, J., delivered the opinion of the court.

This case involves the question as to the relative liability of the different sets of sureties in the several annual bonds of a general receiver.

Until a comparatively recent period, receivers in this state were the mere creatures of the court of chancery, appointed for special cases whenever the exigency arose. But by an act of the assembly passed June 3, 1852, the legislature provided for the appointment of general receivers, who should hold office during the pleasure of the court by whom they might be appointed—see Code 1873, ch. 175, from section 15 to 28. Under this statute Samuel C. Williams was, at September term, 1853, appointed general receiver of the circuit court of Shenandoah county, and he continued to hold office without intermission or re-appointment until September term, 1860, when he was removed by the court. During this period he gave five several annual bonds, as follows :

One of September 8, 1853, the time of his appointment, in the penalty of $10,000, in which Philip Williams and W. W. Magruder were sureties.

Another of September 9, 1854, in the penalty of $10,000, in which W. W. Magruder and W. Moreland were sureties.

Another of September 8, 1855, in the penalty of $10,000, in which Philip Williams was surety.

Another of September 4, 1856, in the penalty of $50,000, in which John Koontz and William Moreland were sureties.

Another of September 4, 1857, in which Philip Williams was surety.

He gave no other bond during the time he remained in office, and died about the 10th of May, 1862, without having paid over the funds in his hands as receiver, either to his successor in office, or to the parties entitled to the same ; and without having settled his account. And in the year 1867, the appellants, who are entitled to whatever amount of money may be found to be due on account of various sums of money, which from time to time have gone into his hands as receiver, under several decrees rendered in the years 1850, 1851, 1855, 1857, and 1859, in the suit of Rhesa Allen, guardian, etc., v. Joseph Allen and wife and others, instituted this suit in equity against the personal representative of the said Williams, and all the living sureties, and the personal representative of the deceased surety for the purpose of ascertaining whether or not said moneys had been regularly loaned out ; who was liable therefor ; and to have a decree for the payment of said sums of money to them.

The cause was first heard by the Hon. Wm. M'Laughlin, in vacation, who rendered an interlocutory decree, but one which settled the principles of the cause, on the 21st day of June, 1872. By this decree he held that the bonds which had been executed annually by the receiver were not cumulative, and that the entire liability for the defaults of the receiver, except for the loans to the firm of Williams & Fravel, rested upon the surety in the last bond, and that as to the loans which appeared to have been made to the firm of Williams & Fravel, of which the receiver himself was a member, the funds thus disposed of were to be regarded

and treated as funds remaining in the hands of the receiver unloaned, for which he and his sureties in the bonds existing as of the date of the receipt of said funds ought to be held liable, with compound interest up to the death of the receiver, and with simple interest from that time.

This decree was reheard on the 13th of September, 1883, when the Hon. —— Newman, the then presiding judge, rendered a decree, in which he held "that the liability upon the sureties in the said several bonds is not cumulative, but relates only to the separate bonds, and extends to default committed within one year from the date of the execution of the said several bonds"; and further, that the principle applied as well to the surety upon the last bond executed by the said Samuel C. Williams, as receiver, as to any previous bond executed by him.

This appeal is mainly from so much of each of these decrees as has been just set out.

It is argued for the appellees, although no great stress is laid upon the point, that a court of equity has no jurisdiction in a case of this kind, and that the bill should be dismissed. The argument is grounded upon the assumption that the plaintiffs have an adequate and complete remedy at law. But the position is untenable. There was a patent necessity for the plaintiffs to come into equity for an account and discovery, and being here, the court will entertain the cause for the purpose of affording the proper relief, if for no other reason, at least to prevent a multiplicity of suits. But it is not true, in point of fact, that the remedy at law is as adequate and complete in a case like the present as it is in equity. Indeed, I do not see how the plaintiffs could get along at all at law without the aid of a court of equity. For, not only do they need the discovery to inform them as to the disposition that has been made of the moneys; the interest that has been collected thereon; and the periods at which the defaults have been committed; but there is no

mode of ascertaining what is due except by an account in a court of equity.    Besides, it is manifestly for the advantage of the sureties that the court of equity retain the case.    For they then have an opportunity of seeing that the account is correctly taken, and have their respective liabilities fixed and determined without having the necessity forced upon them of bringing a separate suit for contribution.    It would seem that in Corprew v. Boyle, 24 Gratt. 284, the jurisdiction of a court of chancery was regarded as so clear in this class of cases that the objection was not even made.    Hutchcraft v. Shrout's Heirs, 1 Monroe 206 ; Cuddeback v. Kent, 5 Paige's Chy. R. 93 ; McDongald v. Maddox, 32 Ga. 63 ; Alexander v. Mercer, 7 Ga. 549 ; Brandt on Suretyship, § 465.    We think there can be no doubt as to the jurisdiction of the court in this case.    Nelson v. Tyler, 14 Gratt. 214 ; 1 Story's Eq. Juris. § 446 et seq., and § 453.

This brings us to the question of prime importance in the case, that is, the relative liability of the different sureties. Now, the obligation of a surety is a matter of strict law. His liability, therefore, cannot be extended or altered by implication.    As the Supreme Court of the United States has said:    ''He is liable to the extent, and in the manner, and under the circumstances pointed out in his obligation, but no further.    He has the right to stand upon the very terms of his contract.''    Miller v. Stewart, 9 Wheat. 680 ; Myers v. United States, 1 McLean, 493.    But this must be understood with the qualification, that if the obligation is entered into with reference to the provisions of any statute, that the provisions of that statute enter into and become a part of the contract, and serve to explain and limit the extent of such obligation.

With these general observations, I proceed to inquire what were the obligations assumed by the sureties in these several consecutive bonds.    If we look merely to words of the statute creating the office of receiver, and the terms of

the bonds, we will perceive that the court is authorized by the statute to appoint a general receiver, who shall hold his office, not for a year, but during its, the court's, pleasure, and that there is not one word to be found in the bonds limiting or defining the receiver's term to a shorter period. Upon the mere words of the statute, then, we should be compelled to hold that the contention of the appellees, that the duration of the term of office of the receiver is limited, by the provision that "he shall annually give * * a bond," to a year, is inconsistent with the express provision that he shall hold his office during the pleasure of the court.

But we are not left to a construction of the mere words of the statute; for similar provisions in statutes requiring that the occupants of offices, whose terms were indefinite, should give bonds at stated periods, have often been before the courts for construction, and it has been very generally, if not uniformly, held that such provisions did not make each renewal of the bond a new appointment to office. In Oats v. Bryan, 3 Dev. 452, Henderson, Ch. J., uses this language : "The act of 1793 (Rev. Code 384), and the act of 1819 (Rev. Code 990), requiring clerks and masters in equity, and the other officers mentioned in them, to renew their bonds at stated periods, does not make each renewal of the bond a new appointment to office, but the new bonds are made additional securities for the performance of the duties of the incumbent." Jones v. Hays, 3 Ired. Eq. R. 509.

But this is not all. For, it has been held, with a frequency almost amounting to unanimity, that where during a term of office, which is for more than a year or indefinite, several bonds are given conditioned for the faithful performance of the duties of the office, that all of the bonds are cumulative. Corprew v. Boyle, 24 Gratt. 284 ; Oats v. Bryan, 3 Dev. 452 ; Jones v. Hays, 3 Ired. Eq. 509 ; Jones

v. Blanton, 6 Iredel Eq. 115 ; Hutchcraft v. Shrout's Heirs, 1 Mon. 206 ; Postmaster-General v. Munger, 2 Paine 196 ; Dering v. Earl of Winchelsea, 1 Cox 308.

It seems, also, upon both reason and authority, with regard to official bonds generally, that they must be construed as prospective unless they are made retrospective in their terms. Farrar v. U. S., 5 Pet. 388 ; U. S. v. Boyd, 15 Pet. 187; Myers v. U. S., 1 McLean 433; Bissell v. Saxton, 66 N. Y. ; Inhabitants of Rochester v. Randall, 105 Mass. 295 ; Vivian v. Otis, 24 Wisc. 518 ; U. S. v. Boyd, 17 How. 187. It follows, therefore, that they do not cover any actual defaults previously committed.

Now, let us apply these principles to the case in hand. Here all of the bonds are conditioned for the faithful performance of the duties of the office, and are prospective in their terms ; they are therefore cumulative securities for the official conduct of the receiver, taking effect from their respective dates and terminating with the removal of the receiver from office. Poole v. Cox, 9 Ired. 69 ; Moore v. Bendinot, 64 N. C. 190.

But as the several bonds differ in amount, the liability of the different sets of sureties is not equal, but in proportion to the penalties of the different bonds. Dering v. Earl of Winchelsea, 1 Cox 308 ; Armitage v. Pulver, 37 N. Y. 494 ; Bell v. Jasper, 2 Ired. Eq. 597 ; Jones v. Blanton, 6 Ired. Eq. 115.

Manifestly the legislature, while enacting this statute, contemplated that it would be difficult, if not inexpedient, for the various courts of the commonwealth to determine in advance what would be the proper penalty of a bond to be given by an officer, the duration of whose term was indefinite, and the receipts of whose office could not, therefore, be even estimated with any approximate degree of accuracy. It therefore hit upon the device of requiring of the incumbent, annual and additional bonds, each of which should be in a

penalty equal at least to the probable amount which might come into his hands for that particular year, and the aggregate penalties of which should therefore be at least equal to his receipts during his entire term.

Upon the question as to the rate of interest which should have been charged against the receiver and his sureties, upon the loans to the firm of Williams & Fravel, it seems to me sufficient to say, that applying, as we must, a strict construction to the terms of the statute, that the receiver and his sureties are only chargeable with simple interest upon the various sums of money which went into the receiver's hands, to be computed from the time at which it became his duty to invest the respective amounts. Code 1874, ch. 175, sec. 20. Lastly, I think that under the liberal practice which prevails in this state, that this must be treated as a creditor's bill although it does not in terms purport to be such, and that other creditors have a right to come in by petition and be made co-plaintiffs with the appellants. Ewing's adm'r v. Ferguson's adm'r, 33 Gratt. 549.

For these reasons I am of opinion that each of the decrees complained of is erroneous in the respects indicated above, and that they must be reversed and annulled in these respects ; and that the cause must be remanded to the circuit court of Shenandoah to be proceeded in to final decree in accordance with the views herein announced.

Decrees reversed.

RICHARDSON, J., dissents.