Statement.

---

# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

ROLLER v. PAUL AND OTHERS.

November 22, 1906.

Absent, Buchanan and Cardwell, JJ.

1. RECEIVERS—*Purchasing Claims at Discount—Credit.*—A receiver who is directed to lend a fund at interest pending litigation over the same, but who purchases at a discount claims payable out of the funds in his hands, is only entitled to credit for the amount paid out for such claims as of the date of his expenditures. He is the arm of the court, its trusted agent, to obey its orders and disburse the funds as directed by the court, and cannot be permitted to use such funds to his own profit. Nor can the beneficiaries be put to an election to take profits or interest. It is not a case for such an election.

2. COUNSEL FEES—*Funds Not Liable.*—Where a fund has not been created, increased or preserved by the aid of counsel, but has at all times been under the control and protection of the court, it is not proper to decree fees to counsel for creditors who have conducted a protracted litigation over a part of the fund, to be paid out of a residuum of the fund to which the creditors are not and never were entitled.

3. SPECIAL RECEIVERS—*Failure to Invest Funds—Interest.*—A special receiver directed to lend a fund at interest on real estate or other good security who fails to do so, but keeps the fund in his own hands, is chargeable only with simple interest from the time it was his duty to invest the fund. Code, section 3413, relating to interest on loans made by receivers, is not applicable to this case.

Appeal from a decree in chancery of the Circuit Court of Rockingham county directing settlement of a receiver's account. From an adverse decree the receiver appeals.

*Affirmed.*

The opinion states the case.

*Marshall McCormick* and *John E. Roller,* for the appellant.

*Sipe & Harris* and *Conrad & Conrad,* for the appellees.

HARRISON, J., delivered the opinion of the Court.

In the year 1871 the original bill of Valentine and Franklin against Isaac Paul and Sons was filed in the Circuit Court of Rockingham county, seeking to enforce a judgment in favor of the plaintiffs against the defendants. This cause soon developed into a general creditors' suit, not only against the partnership of Isaac Paul and Sons, but against the individual members of the firm, which was composed of Isaac Paul and his sons, William I. Paul and Robert C. Paul. In the year 1876 the appellant, John E. Roller, appeared in the case as counsel for Saufley's administrator, asserting a debt against the firm of Isaac Paul and Sons, alleged to be a vendor's lien on a tract of land which had been already sold and the proceeds applied to inferior liens, and asking that his client be reimbursed from other assets of the debtor. After various reports of a commissioner had been made, ascertaining the assets of the defendant firm and of the individual members thereof, and the indebtedness against them, and after a number of sales of property had been made, O. B. Roller, acting as special commissioner, under a decree at the May term, 1877, sold a tract of land belonging to William I. Paul, containing sixty-seven acres, one rood and five poles, to John R. Liskey, at the price of twenty-four dollars and fifteen cents per acre. By decree of March 15, 1878, this sale was confirmed; the controversy in the cause then pending between the infant children of William I. Paul and his creditors, with respect to this tract of land, was transferred to the fund arising from its sale, and the appellant John E. Roller, who was inadvertently mentioned in the decree as having made the sale, was directed, as special commissioner and receiver, upon giving bond in the penalty of three thousand dollars, to receive the cash payment from the purchaser, John R. Liskey, and to collect the deferred payments as they fell due, and to place the

fund at interest, taking real estate or other undoubted security, so as to have the fund well secured and forthcoming when required by decree to be thereafter rendered. It is not denied that under this decree of March 15, 1878, the proceeds of this William I. Paul tract of land passed into the hands of the appellant; that it was never invested by him as the decree directed, but has remained in his hands to the present time.

By decree of April, 1899, the appellant was directed to settle his account as receiver of the funds arising from the sale of the William I. Paul land. What credits shall be allowed the appellant in this settlement, and what interest he shall be required to account for, are the subjects of the present controversy.

In his petition for appeal appellant assigns two errors. The first that we shall consider is that the Circuit Court erred in refusing to allow credit for the judgments against the fund, which had been assigned to appellant by Reese & Brother, and others.

It appears from the record that, subsequent to his appointment as receiver, the appellant, for a comparatively small sum, bought up certain claims that were payable out of the funds in his hands as receiver. He now insists that he should receive credit in the settlement of his account for the full face value of such claims.

This contention cannot be sustained. We are of opinion that the Circuit Court was plainly right in limiting its receiver to a credit on this account of only such sums as he had paid out in acquiring the claims in question, as of the date of such expenditure.

In the case of *Baugh's Ex'or* v. *Walker,* 77 Va. 99, numerous authorities are cited in support of the well-settled proposition that neither trustees, executors nor administrators will be permitted to obtain any profit or advantage in managing funds in their hands, but that whatever benefits or profits are obtained will belong exclusively to the *cestui que trust.* They are not

permitted to buy up debts, payable out of funds held by them in a fiduciary capacity, on their own account, but whatever advantage is thus derived by them, by purchases at an under value, is the common benefit of the estate. It is a settled rule in equity that if a trustee purchase claims against the trust estate at a discount the purchase shall enure to the benefit of the interest which it is his duty to protect. 1 Leading Cases in Eq. (4th Ed.), pages 64, 65. Such purchases ought justly, and upon all sound principles of public policy, to enure to the benefit of the trust, and not to the benefit of the trustee. *Green* v. *Winter,* 1 Johnson's Chy. 27, 36, 7 Am. Dec. 475. Weighty authority elaborating and enforcing these principles could be multiplied if it were necessary. *Miller* v. *Holcombe's Exor.,* 9 Gratt. 665, 667.

These principles apply with equal, if not greater, force to the special receiver of the court in a case like this. He is the trusted officer and representative of the court, its arm, charged with the delicate and responsible duty of handling and disposing of funds which have come under the control of the court. The parties litigant are looking to the court, and through it to the receiver, for the proper care and distribution of the fund according to their respective rights; and if, instead of investing the fund, as required by the decree appointing him, the receiver were permitted to use such fund for the purpose of buying up, for his own gain, the claims of the creditors at a discount, it is easy to see that the result would be disastrous to those who had sought the court's protection. The argument that an attorney who becomes receiver would, under such circumstances, be denied the right to represent his client is not tenable. The professional relation suggested is known of record to the court and counsel in the cause; and the relation of the receiver to the court is that of a disinterested officer, whose duty it is to obey the court's orders and to disburse the fund in his hands when and to whom the court shall direct. But it is a widely different situation when, as in the case at bar, the personal and private

relation of appellant, as the beneficial owner of the judgments now asserted by him, was not known to court or counsel until he was called upon to settle his accounts, more than fifteen years after he had become the purchaser of such claims, and thereby personally interested in the fund he was supposed to be aiding the court in properly administering. It is of the utmost importance that, in his character as receiver, he should have no personal interest but that flowing from the accurate and faithful discharge of his duties.

> "If self the wavering balance shake,
>   It's rarely right adjusted."

Hence the universal and inexorable rule of courts of equity, in all cases where the fiduciary relation exists, that the purchase of adverse claims against the fund being administered shall enure to the benefit of the trust and not to the benefit of the trustee.

It is argued in the petition for appeal that the beneficiaries of the fund in controversy must elect whether they will take interest on the principal sum involved, or the profits which have been made. The doctrine of election relied on has no application in a case like this where the appellant was an officer of the court, charged with the faithful performance of a certain statutory duty. The view suggested would put the court in the attitude of speculating with the funds under its control, and then requiring the beneficiaries to elect whether they will take profits or interest. The numerous cases to which we have adverted hold, that in cases where the fiduciary purchases adverse claims against the fund under his control, he is only entitled to credit for the amount expended in making such purchases; that sound principles of equitable policy require that such transactions should enure to the benefit of the trust and not to the benefit of the trustee. To apply the doctrine of election in such a case would deprive the trust of the benefit of the transaction by requiring the beneficiary to either give up the profit or give up

the interest due him on his fund in the hands of the receiver. And, further, the application of such a doctrine in this case would tend to encourage a course of dealing with funds in court that cannot be too earnestly discouraged by courts of equity.

It is further assigned as error by the appellant, that the Circuit Court erred in refusing to allow him, in the settlement of his accounts, compensation for his services as attorney, for bringing in, preserving and protecting the fund.

A careful examination of the record fails to disclose any ground upon which this claim can be rested. As already seen, the appellant appeared in the case as counsel for Saufley's administrator in the year 1876. At the October term, 1877, he filed in the cause an affidavit setting forth that the land of William I. Paul was being trespassed upon, and secured an order restraining the trespasser. In less than six months after this order was made the land had been sold and the proceeds of sale had passed into the hands of the appellant as special receiver of the court. From that time to the date of the final decree appealed from, the litigation has been over the fund in the hands of the appellant, who has been representing claims opposed in interest to those who are now entitled to the balance in his hands. The claims asserted against William I. Paul have been so far satisfied as to leave a balance of the proceeds of his land payable to him or his assignee. The balance that is left to this debtor can hardly be appropriated to the payment of fees to the counsel of those who have sold his land and fought for years over its proceeds. When their claims were satisfied they had secured from their debtor's property all that they were entitled to. There was no creation of this fund by anyone. It arose, as already seen, from the judicial sale of William I. Paul's land, and has been ever since under the control and protection of the court, awaiting a settlement of the rights of the respective contesting claimants thereto. The record discloses no service of the appellant to those entitled to the balance in his hands, for which he is entitled to compensation from them.

Under Rule IX, the appellees assign as cross-error the action of the Circuit Court in holding that its special receiver in this cause was not chargeable with compound interest on the funds in his hands, but was only chargeable with simple interest on such funds. In support of this assignment of error it is contended that, whenever a receiver of funds under the control of a court is directed to invest such funds, he is accountable for interest thereon according to the terms of section 3413 of the Code, which is as follows: "The interest on all loans made to individuals under an order of court shall become due and payable on the first day of January next after the loan was made, and annually on the first day of January of each succeeding year, until the principal is paid; and unless the interest be paid at the time it becomes due and payable, compound interest shall be charged thereon to the borrower from such time until payment thereof is made."

The position of the appellees is that, in dealing with the trust fund in this cause, the appellant was a wrongdoer, and therefore has no equities quoad the transaction in question; that the decree appointing appellant receiver recognized the controversy over the land, transferred the proceeds thereof to the fund in court, directed the receiver to give bond in the penalty of $3,000— which does not appear to have been done—authorized him to collect the purchase money, and directed him to place the fund at interest, taking real estate or other undoubted security, so as to have the fund well secured and forthcoming when required by decree to be thereafter entered. It is insisted that the duty of appellant under this decree was plain; that had he invested the fund as directed it would have borne compound interest under the express terms of section 3413; and that the beneficiaries of the fund should not be placed in a worse position by the receiver of the court disobeying its order than they would have occupied had that order been obeyed by him; that the receiver having seen fit to disregard the decree under which he was acting, and to retain the fund in his own hands, he must be

treated as the borrower and held to account upon the same terms that the borrower would have been compelled to account had the decree been obeyed; that where there is an express trust to make improvement of money, and no honest endeavor is made to improve it, there is nothing wrong in considering the trustee to have lent the money to himself upon the same terms upon which he should have lent it to others; that to hold otherwise would be to reward receivers for disregarding the orders of the court, and to induce them to ignore such orders and the positive provisions of the statute, to the prejudice of those entitled to the fund, in order that they may use the fund at simple interest; that disobedience of the decree under which he is acting is made to result to the advantage and profit of the receiver, whereas obedience of the court's order would have resulted in the improvement of the fund for the *cestui que trust;* and that equity regards that as done which ought to be done, and never allows one to take advantage of his own wrong.

On the other hand it is earnestly insisted by the appellant that the statute invoked by the appellees is a part of the act of 1852, which relates to general receivers of the court and not to special receivers; that no special receiver can loan out money at compound interest, and therefore cannot be required to pay compound interest; that it has never been the practice of the Virginia courts to charge compound interest to a special receiver; and that, even in the case of a general receiver, it has been decided, in the case of *Walton* v. *Williams,* 1 Va. Dec. 579, that where such a receiver has loaned the funds to a firm of which he was a member, he and his sureties are chargeable with simple interest only, to be computed from the time it became his duty to invest the fund, which case it is contended has been noted by the revisors on the margin of the Code of 1887, as giving the proper construction of section 3409 of that Code, and although numerous legislatures have assembled since that date no change has ever been made or suggested to that section. There was a partial settlement of the accounts of the

receiver with the fund in question in 1885, showing that the fund came into his hands during the years 1878, 1879, 1880 and 1881. It is insisted that this settlement recognizes that appellant was only chargeable with simple interest on the fund in his hands, and that such settlement was confirmed by decree of October 29, 1885, which decree has never been reheard, set aside òr annulled. It is finally insisted that the rule fixed by section 3409 of the Code is to charge the receiver in all cases where he fails to invest, as required by the preceding sections, with simple interest alone, and that this rule is the one to be followed in the case at bar.

The views presented by the appellees in support of this assignment of error have, in my judgment, great force, and I am inclined to think that they should prevail under the circumstances of this case; and that the appellant should be held to make good to the appellees all the loss they will otherwise suffer by reason of his failure to obey the plain mandate of the decree from which he derived his authority. The majority of the court are, however, of the opinion that the ruling of the Circuit Court upon this question, holding that appellant is only chargeable with simple interest, should be affirmed.

The decree appealed from must, therefore, be in all respects affirmed.

*Affirmed.*